IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

| | |
|---|---|
| DONTE NELSON, SR.<br>13505 Pendleton Street<br>Fort Washington, Maryland 20744<br><br>v.<br><br>CARLOS DEL TORO, in his official capacity<br>as Secretary of the Department of the Navy<br>    SERVE: 1200 Navy Pentagon<br>             Washington DC 20350-1200<br><br>    and,<br><br>THE UNITED STATES DEPARTMENT OF THE NAVY<br>    SERVE: 1200 Navy Pentagon<br>             Washington DC 20350-1200<br><br>    and,<br><br>U.S. MERIT SYSTEMS PROTECTION BOARD<br>    SERVE: 1615 M Street, NW<br>             Washington, DC 20419 | Case No. TJS 24 CV 0777<br><br>DEMAND FOR JURY TRIAL |

## COMPLAINT

Officer Donte Nelson, Sr. ("Ofc. Nelson"), proceeding *pro se*, hereby seeks judicial review of an Order of the Merit Systems Protection Board (the "MSPB") addressing the merits of his employment-related claims against the U.S. Department of the Navy (the "Navy"), and further seeks *de novo* adjudication of his employment discrimination claims, and, in furtherance thereof, states as follows:

### Nature of the Case

1. This action arises from the Navy's unlawful and discriminatory demotion of Ofc. Nelson in November of 2017 under the pretext of his failure to complete a training program that he attended almost eighteen months earlier, and despite the Navy having never communicated to

1

Ofc. Nelson that completing such training was required to continue in his then-position as a federal Police Officer. Notwithstanding his longstanding federal service and indisputably exemplary performance as a Police Officer, the Navy coerced Ofc. Nelson to accept a demotion to Security Guard, despite having never informed him that such position carried a pay decrease. When Ofc. Nelson protested the Navy's assertions that the training program at issue was a prerequisite to continued employment as a Police Officer and requested he be provided an opportunity to retake such training, the Navy denied his request, despite having permitted a non-African American colleague of Ofc. Nelson another chance to complete such. After almost seven years of seeking relief through administrative processes, Ofc. Nelson brings this timely action under Title VII of the Civil Rights Act of 1964 and the Civil Service Reform Act of 1978 to recover monetary compensation for his lost wages and emotional distress, reimbursement of his attorneys' fees and costs, and equitable relief in the form of a promotion to the rank and role he would have attained but for the Navy's unlawful conduct.

### The Parties

1. Ofc. Nelson is a citizen of the State of Maryland whose primary place of residence is 13505 Pendleton Street, Fort Washington, Maryland 20744.
2. Carlos del Toro is the Secretary of the Department of Navy and required to be named as a Defendant with respect to various actions asserted against the Navy, including those arising under Title VII of the Civil Rights Act of 1964.
3. The Navy is a department of the federal government and, during the relevant time period, employed Ofc. Nelson in Charles County, Maryland.

4. The MSPB is a quasi-judicial agency of the executive branch that adjudicates disputes regarding personnel actions implicating federal employees.

## Procedural Background

5. Ofc. Nelson submitted a timely complaint of discrimination with the Navy's Equal Opportunity (the "EEO") division on March 22, 2018.

6. On November 18, 2018, the Navy's EEO division issued a final agency decision on the merits of Ofc. Nelson's complaint determining the government did not engage in discrimination.

7. On December 1, 2018, Ofc. Nelson timely appealed the EEO's dismissal of his discrimination complaint to the Washington Regional Office of the Merit Systems Protection Board.

8. On August 1, 2019, an Administrative Law Judge of the MSPB issued an Initial Decision dismissing the petition for lack of jurisdiction due to Ofc. Nelson's purported failure to establish that his demotion was involuntary or that his race (African American) played a factor in such adverse employment action.

9. Ofc. Nelson timely appealed this Initial Decision to the MSPB on August 19, 2019.

10. On February 9, 2024, the MSPB entered the Final Order affirming the dismissal of Ofc. Nelson's petition for lack of jurisdiction due to his supposed inability to establish that his demotion was involuntary or related to his race.

## Jurisdiction and Venue

11. This Court has personal jurisdiction over the Navy as an executive agency of the United States of America and the Secretary of the Navy, in his official capacity, as its designated Respondent with respect to certain statutory actions.

12. This Court has personal jurisdiction over the MSPB as a quasi-judicial agency in the United States executive branch.

13. This Court has subject matter jurisdiction over this action pursuant to 5 U.S.C. § 7703(b)(2) and 5 C.F.R. § 1201.10.

14. Ofc. Nelson seeks judicial review of a Final Order of the MSPB issued on February 9, 2024 (the "MSPB Final Order") and *de novo* adjudication of his Title VII claims for race discrimination.

15. The MSPB Final Order affirmed dismissal of Ofc. Nelson's employment claims for lack of jurisdiction upon consideration of the MSPB's above-mentioned evaluation of the substantive merits of such claims as set forth in the August 1, 2019 Initial Decision.

16. The claims at issue in the MSPB Order were based, in part, on unlawful discrimination.

17. Accordingly, and as acknowledged in the MSPB's Initial Order and Final Order, because Ofc. Nelson's claims are based, in whole or in part, on unlawful discrimination, Ofc. Nelson's claims constitute a "mixed case" pursuant to 29 C.F.R. § 1614.302, thereby entitling him to file for review of the MSPB Order and adjudication of his discrimination claims in an appropriate United States District Court.

18. Ofc. Nelson received a copy of the MSPB order by U.S. Mail on February 14, 2024, and therefore is entitled to initiate an action in an appropriate United States District Court by March 15, 2024, rendering this Complaint timely.

19. Venue is appropriate in this Court because the alleged violations of Title VII, the Civil Service Reform Act, and federal employee due process rights occurred within Charles County, Maryland.

## Facts

### Ofc. Nelson's Employment with the Navy

20. At all times relevant hereto, Ofc. Nelson was—and continues to be as of the date of this filing—an experienced law enforcement professional and longstanding employee of the federal government.

21. Ofc. Nelson is African American, and all relevant decisionmakers identified herein were aware of his race during the relevant time period.

22. Ofc. Nelson first joined the employ of the federal government in 2012 as a security contractor for the National Aeronautics and Space Administration ("NASA").

23. On or around January 25, 2016, Ofc. Nelson accepted a position as a Police Officer, GS 0083-05 with the Navy and provided security services at a Naval Support Facility in Indian Head, Maryland (the "Facility").

24. As a Police Officer at the Facility, Ofc. Nelson was charged with manning the locations' entry gates to ensure access was only granted to authorized personnel, patrolling the facility's perimeter to ensure all points of access were properly secured, conducting vehicle screenings, and reporting any suspicious activity to his immediate supervisor(s).

25. Ofc. Nelson was at all times an exemplary employee, receiving frequent accolades and consistently positive performance evaluations.

26. Specifically, in addition to promotions between 2012 and the date of this filing, the Navy awarded Ofc. Nelson numerous incentive cash bonuses and, more recently, recognition of his ten years of outstanding federal service.

27. In addition to his on-the-job performance, Ofc. Nelson ensured compliance with necessary training and continuing education, including regularly attending reaccreditation programs wherein he received satisfactory scores.

28. Notwithstanding his completion of such training programs, Ofc. Nelson's written job description and vacancy posting did not require his completion of programs offered through the Federal Law Enforcement Training Centers ("FLETC").

29. Specifically, Ofc. Nelson's written job description required his "successful completion of a Federal, State, county or municipal police academy," or comparable training course – an accreditation Ofc. Nelson possessed by virtue of his prior tenure as a security contractor with NASA.

30. In addition to his eligibility for the Police Officer GS0083-5 position, Ofc. Nelson ensured his maintenance of such accreditation through necessary annual sustainment training, as well as weapons qualification courses.

31. Ofc. Nelson satisfactorily completed his annual sustainment training courses, and therefore was qualified at all times relevant hereto to serve as a Police Officer pursuant to the written eligibility requirements that the Navy presented to him in January of 2016.

32. On June 11, 2017, as a result of his stellar performance with the Navy, Ofc. Nelson was promoted to Police Officer GS0083-6.

33. As a Police Officer GS0083-6, Ofc. Nelson earned an adjusted base salary of $46,381.00 annually.

34. In the summer of 2016, Ofc. Nelson voluntarily attempted to complete FLETC training, which generally consists of over a dozen components involving written examinations and evaluations of his physical condition and capabilities.

35. Ofc. Nelson received favorable results in all but a single component of the FLETC program, for which he received a score of "Unsatisfactory."

36. Although disappointed to have not received his FLETC accreditation, Ofc. Nelson had no reason to believe his failure to do so would impact his position or career prospects given he had already completed the Navy's minimum training expectations for his position. Rather, Ofc. Nelson hoped to reattend FLETC training at a later date.

### The Navy's Unlawful Demotion of Ofc. Nelson

37. In the fall of 2017—over a year after Ofc. Nelson's attempt to complete the FLETC program in May/June of 2016, and only a few months after his promotion—the Navy informed Ofc. Nelson he could not continue in his capacity as a Police Officer due to his failure of FLETC training 17 months earlier.

38. Ofc. Nelson protested this decision to his immediate supervisors, both of whom are Caucasian, and properly asserted that completion of this course was not a requirement of his job duties or eligibility to perform such.

39. Ofc. Nelson further questioned why the Navy only raised this issue for the first time *over a year* after his first attempt to complete FLETC training, and why the importance of completing such course was not communicated to him beforehand.

40. Upon being made aware of the importance of this FLETC accreditation in the fall of 2017 with respect to his position and career prospects, Ofc. Nelson requested he be permitted another opportunity to complete such.

7

41. The Navy refused Ofc. Nelson's request to reattempt FLETC training, on the basis that—due to a purported internal protocol that had never previously been conveyed to Ofc. Nelson—Police Officers were only allowed one attempt to complete the course.

42. Notwithstanding this representation by his Navy supervisors as to the Navy's internal policy, upon information and belief, at least one of Ofc. Nelson's colleagues at the time, including Margarida McBride, were permitted to retake FLETC training in order to attempt to maintain their role as a Police Officer.

43. Specifically, on information and belief, Ms. McBride, a non-African American Police Officer at the Facility, similarly received an unsatisfactory score as to at least one component of her FLETC training.

44. However, on information and belief, Ofc. Nelson's supervisors permitted Ms. McBride to reattend the FLETC program.

45. Upon information and belief, even after failing FLETC training a second time, Ms. McBride was not immediately demoted to Security Officer.

46. Through this disparate treatment with respect to a Police Officer's ability to retake FLETC training, the Navy effectively provided non-African American Police Officers a "second bite at the apple" with respect to completing training that was a supposed requisite to maintaining their respective position and rank.

47. Following its discriminatory decision to not permit Ofc. Nelson another attempt to take and complete FLETC training, the Navy presented him with the option to accept a new position as Security Guard, GS-0085-05, at the Facility.

48. When suggesting Ofc. Nelson accept this reassignment, the Navy made clear that his employment would otherwise be terminated due to his incompletion of FLETC training.

49. In contradiction of the department's internal policy, as well as the rules and regulations propounded by the Office of Personnel Management ("OPM"), the Navy never provided Ofc. Nelson with a personnel action notice in connection with this proposed reassignment.

50. Rather, this demotion was presented to Ofc. Nelson by Captain Daniel Henderson, a supervisor of Ofc. Nelson, who is not permitted to effectuate final personnel actions, including demotions and changes to an employee's pay rate.

51. The Navy never formally informed Ofc. Nelson that the proposed Security Guard position would entail a pay decrease and other material changes to the terms of his employment.

52. Indeed, the adjusted base salary for the Security Officer, GS-0085-05 position is $38,701.00 – approximately 18% less than the annual salary of his previous Police Officer, GS0083-6 position.

53. Upon his demotion to Security Guard, Ofc. Nelson learned his duties in this new capacity were substantively the same as those he performed as a Police Officer, GS-0085-05/06.

54. Upon information and belief, had the Navy not unlawfully demoted Ofc. Nelson from his position as Police Officer, it is highly likely he would have attained the rank of Corporal within the subsequent two years.

55. Upon realizing that his Security Guard position carried materially different terms, Ofc. Nelson submitted a complaint of discrimination with the EEO office in March of 2018.

56. During the ensuing EEO proceedings and thereafter, the Navy attempted to obfuscate and delay adjudication of Ofc. Nelson's claims.

57. During those proceedings, the Navy effectively admitted the manner in which Ofc. Nelson was demoted, and the reasons therefore, contradicted department practice, and that it was unable to produce any evidence Ofc. Nelson had been informed that completion of FLETC

training was a requirement of his position or that Ofc. Nelson was informed of the material changes associated with accepting Security Guard position in 2017.

58. Indeed, the Navy informed the EEO it was unable to locate the vacancy announcement under which Ofc. Nelson was hired in January of 2016, and instead relied on a cursory email exchange as its sole evidence of Ofc. Nelson's informed consent to the terms of the Security Guard position that the Navy coercively proffered.

59. Indeed, during the MSPB proceedings, the Navy's motion to dismiss Ofc. Nelson's claims on the basis that he voluntarily accepted the material change in terms associated with the Security Guard position was denied after the Administrative Judge found that no evidence existed suggesting that Ofc. Nelson agreed to, or was even aware of, the decrease in pay associated with the proposed reassignment.

60. The Navy's persistence and obstinance in its defense against Ofc. Nelson's claims over the past seven years has caused, and continues to cause, Ofc. Nelson significant emotional distress.

61. After being compelled to continue as a Security Guard at the Facility for approximately two years, Ofc. Nelson secured a position as a Police Officer, GS-0085-06, with a detachment based at the Navy Yards, Washington D.C.

62. Tellingly, Ofc. Nelson obtained this position despite still having not been provided an opportunity to reattempt completion of FLETC training.

63. Indeed, Ofc. Nelson's current position does not require such accreditation despite bearing same rank as the position from which Ofc. Nelson was unlawfully demoted in 2017.

## COUNT I – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (Discrimination Based on Race)

64. Ofc. Nelson restates and incorporates the allegations contained in Paragraphs 1 - 63 above as if fully set forth herein.

65. The Navy treated Ofc. Nelson disparately based on his race when refusing his request to reattempt FLETC training.

66. Specifically, the Navy denied this request by Ofc. Nelson, an African American, but permitted at least one non-African American Police Officer at the Facility who had previously failed FLETC training to retake the course.

67. Upon information and belief, the Navy did not immediately demote this non-African American Police Officer even after she failed to complete FLETC training for a second time.

68. Accordingly, the Navy treated a Police Officer outside Ofc. Nelson's protected class more favorably based upon race.

69. Despite asserting that Ofc. Nelson was required to complete FLETC training to remain eligible as a Police Officer, the Navy was aware Ofc. Nelson had never previously been informed that such training was a requirement of his position.

70. Further, the Navy was aware that his written job description and the vacancy announcement under which he applied did not suggest the need for completion of this training.

71. Rather, the Navy unlawfully used its undisclosed, arbitrary, and capriciously applied training policy as a pretext to discriminate against Ofc. Nelson on account of his race.

72. By informing Ofc. Nelson he was no longer eligible to work as a Police Officer and that, should he wish to continue in the federal government's employ, he must accept a demotion to Security Guard, the Navy effectuated an adverse employment action against Ofc. Nelson.

73. The Navy perpetuated its discriminatory targeting of Ofc. Nelson by willfully failing to inform Ofc. Nelson that his acceptance of the proposed position of Security Officer would carry a decrease in compensation despite such role bearing almost identical duties to those he had performed as a Police Officer.

74. As a result of the Navy's conduct, Ofc. Nelson suffered monetary damages, an encumbrance upon his eligibility for professional development and promotion within federal law enforcement, as well as emotional distress.

## COUNT II – VIOLATION OF CIVIL SERVICE REFORM ACT AND FEDERAL EMPLOYEE DUE PROCESS RIGHTS

### (Unlawful Demotion)

75. Ofc. Nelson restates and incorporates the allegations contained in Paragraphs 1 - 74 above as if fully set forth herein.

76. Pursuant to the Civil Service Reform Act (the "CRSA") and the due process rights set forth in the United States Constitution, federal employees are entitled to notice of adverse employment action by their respective employing agency, and an opportunity to be heard prior to the effectuation of such action.

77. As a tenured federal employee, Ofc. Nelson is entitled to due process with respect to any material personnel actions prior to the implementation of such, including demotions and changes in compensation.

78. The Navy violated the CRSA and Ofc. Nelson's due process rights, with respect to its demotion of Ofc. Nelson in or around November of 2017.

79. The Navy failed to establish cause to remove Ofc. Nelson from his position of Police Officer given that his position did not require his attendance and/or completion of FLETC training.

80. The Navy is required to sufficiently communicate all eligibility requirements with respect to a given position, including the Police Officer GS-0085-05/06 roles at the Facility held by Ofc. Nelson.

81. Neither the vacancy posting under which Ofc. Nelson applied in 2015, the written job description, nor any other materials provided to Ofc. Nelson prior to November of 2017 suggested his completion of FLETC training was required to maintain this position.

82. To the extent this requirement even existed during the relevant time period – rather than being a fabricated pretext for discrimination – the Navy violated Ofc. Nelson's due process rights by failing to inform him of such.

83. The Navy further violated Ofc. Nelson's due process rights by refusing to allow him to retake FLETC training, especially given another Police Officer of a different race/ethnicity was permitted to reattempt such training. Further, Ofc. Nelson had not been aware that completion of FLETC training was a requirement for his position when first attempting the program in the summer of 2016.

84. Finally, the Navy violated Ofc. Nelson's due process rights by coercing his agreement to accept a position as Security Guard under the threat of losing his federal employment should he decline such new position, all the while failing to provide him a formal personnel notice detailing the terms of such, including a significant decrease in compensation.

85. As a result of the Navy's unlawful actions, Ofc. Nelson suffered monetary damages and an encumbrance upon his eligibility for development and promotion within federal law enforcement

## PRAYER FOR RELIEF

Ofc. Nelson respectfully prays that this Court enter the following relief:

A. Entry of a monetary award of backpay equivalent to the difference between Ofc. Nelson's earnings to date and those he would have earned but for the Navy's unlawful discrimination beginning in or around November of 2017.

B. Entry of a monetary award for emotional distress damages in an amount not less than $250,000.00.

C. Entry of injunctive relief requiring the Navy to instate Ofc. Nelson at a rank and/or position equivalent to that he would presently hold but for the Navy's unlawful discrimination.

D. An award of reasonable attorneys' fees and costs incurred in pursuing this action.

E. All such further relief that this Court deems appropriate and just based on the evidentiary record developed upon its disposition of this case.

## DEMAND FOR JURY TRIAL

Ofc. Nelson hereby demands a trial by jury on all issues so triable.

Dated March 15, 2024

Respectfully submitted,

/s/ Donte Nelson
Donte Nelson, Sr.
12505 Pendleton Street
Fort Washington, Maryland 20744
Telephone: (301) 379-0457
Email: nelson2tru@gmail.com

## CERTIFICATE OF SERVICE

I certify that the foregoing documents were served upon the parties listed below by way of U. S Mail, Certified Return Receipt Requested:

Carlos Del Toro
Secretary of the Department of the Navy
1200 Navy Pentagon Drive
Washington, DC 20350-1200

The United States Department of the Navy
1200 Navy Pentagon Drive
Washington, DC 20350-1200

U. S. Merit Systems Protection Board (MSPB)
1615 M Street, NW
Washington, DC 20419

03-15-24
Date

Donte Nelson, Sr.
12505 Pendleton Street
Fort Washington, Maryland 20744
Telephone: 301-379-0457
E-mail: nelson2tru@gmail.com